IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                NO.  1:21-cr-00264-WJ-1

STEVEN SILGUERO,

    Defendant.

## DEFENDANTS' MOTION TO SUPPRESS EVIDENCE DERIVED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE

COME NOW, Defendant by and through his counsel of record, pursuant to the U.S. Const. amend. IV, Federal Rule of Criminal Procedure 12(b)(3)(C), and *Franks v. Delaware*, 438 U.S. 154 (1978), respectfully moves this court to file an Order suppressing all evidence derived from the illegal search of the Defendant's guitar case. In support thereof, Defendant submits the following:

### INTRODUCTION

The Fourth Amendment of the United States Constitution forbids government officials from conducting unreasonable searches and seizures of persons, houses, papers, and effects. The Fourth Amendment's basic purpose "'is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Carpenter v. United States*, 138 S.Ct. 2206, 2213 (2018) (quoting *Camara v. Municipal Court City and County of San Francisco*, 387 U.S. 523, 528 (1967)). Individuals are protected against arbitrary government invasions, by the Fourth Amendment's Warrant Clause, which mandates that absent limited exceptions, "police obtain a warrant from a neutral and disinterested [judge] before embarking upon a search." *See Franks v. Delaware*, 438 U.S. 154, 164 (1978).

## FACTUAL BASIS

In this case, law enforcement constitutionally violated the Defendants' Fourth Amendment rights when, on December 2, 2020 and without permission, and based on a hunch, deputies opened and searched the defendant's guitar case. Inside the guitar case deputies found a firearm. The deputies did not have probable cause for opening the guitar case, nor was there an exception for the warrantless search.

There are two very different versions of events leading to the warrantless search. First there is the sworn criminal complaint affidavit and subsequent police discovery. This version of events justifies the warrantless search. But the second version of events comes from the belt tape audio worn by the officer. The defense believes the actual police belt tape audio from the police encounter is the most reliable and accurate depiction of the December 2, 2020 events.

### *Summary of Audio recording*

On December 2, 2020, at approximately 16:54 hours, Deputies with the Bernalillo County Sheriff's Office (BCSO) were dispatched to the Circle K gas station located at 3440 Isleta Blvd SW in Albuquerque NM regarding a disturbance. The calling party stated that a male subject was wearing a black jacket, black shirt. gray pants, and carrying a guitar case was having an "episode" inside the gas station. Based on Deputy Regalado's belt tape audio, when deputies arrived they met with Steven Silguero who had asked the store clerk to call the police because he thought he was being followed. Deputies thought Mr. Silguero was having a mental health issue and agreed to take him to a bus stop. The deputies had Mr. Silguero get into Deputy Grimes' vehicle and deputies put the guitar case in the trunk of Deputy Regaldo's vehicle. Mr. Silguero telephones his mom and tells her the deputies are going to take him to the bus stop and he will see her soon. Meanwhile, Deputy Regaldo decides to open the guitar case "because it feels weird."

2

It is clear from the belt tape audio that the deputy opened the bag based on a hunch, that the guitar case did not feel like a guitar.  He unzips the bag and is surprised by what he finds. The deputy did not have permission to unzip the bag.  This is an unlawful search.  The Fourth Amendment of the United States Constitution forbids government officials from conducting unreasonable searches and seizures of persons, houses, papers, and effects. The Fourth Amendment's basic purpose "'is to safeguard the privacy and security of individuals against arbitrary invasions by government officials.' " *Carpenter v. United States*, 138 S.Ct. 2206, 2213 (2018) (quoting *Camara v. Municipal Court City and County of San Francisco*, 387 U.S. 523, 528 (1967)). Individuals, such as Mr. Segura, are protected against arbitrary government invasions, by the United States Constitution Fourth Amendment's Warrant Clause.  This clause, which mandates that absent limited exceptions, "police obtain a warrant from a neutral and disinterested [judge] before embarking upon a search." *See Franks v. Delaware*, 438 U.S. 154, 164 (1978).

### *Facts from the criminal complaint affidavit*

The facts in the criminal complaint affidavit filed in New Mexico State court are very different from the audio recording. The defense contends the belt tape audio is the most accurate capture of the actual events.  The defense contends the deputies wrote the criminal complaint in a manner not accurate with the actual events, but instead they wrote it to support the search.  They changed what really happened.

Because the criminal complaint affidavit directly contradicts the belt tape audio, it supports the theory that the search was based on a hunch.  The deputies knew the criminal complaint could not be written in a manner that reveals the search was based on a hunch.  Once the deputies found the gun, and know they searched on a hunch, they then changed the truth and wrote the criminal complaint so it sounded like there was probable cause for the search.  This is evidence they knew the search was wrong.  The defense contends the belt tape recording is the

most accurate depiction of the facts. The state criminal complaint was based, in part, on falsehoods.

The state criminal complaint affidavit states that the deputy knew the defendant was a convicted felon before he opened the bag. Deputy Grimes wrote, "While sitting in the back of my unit, I asked Steven if he had ever been to MDC to which he replied he went to prison." *State Criminal Complaint*, filed on December 2, 2020 in the Bernalillo County Metropolitan Court which was then transferred to the Second Judicial District Court on April 27, 2021.

The complaint goes on to state that the deputy knew there was a firearm in the guitar case. "Steven's soft shell guitar case remained leaning against the building. Deputy Regalado #295 picked up the case by the long end of the bag. Through his training and experience, he advised it was obvious that there was a long gun inside." *See State Criminal Complaint* Exhibit A at page one (1). There is nothing in the audio tape to support that the deputy knew there was a long gun inside. In fact, he speculates about the contents while searching the bag. He states at 14:14 on Deputy Regalado's belt tape audio he states "this feels weird, I'm just making sure this is a guitar"  Searching a bag because it feels "weird" is not legal.

This court should rely on the facts from the belt tape recording as the most accurate depiction of the facts.  The criminal complaint has numerous misrepresentations and material omissions.  These facts contradict with the audio tape recording.

### *Misrepresentations and Material Omissions*

1. ***The Affiant knowingly and with reckless disregard for the truth falsely stated***

In the  Federal Complaint, "As deputies attempted to pick up the guitar case by the area of where the neck of the guitar would be, deputies felt an object that was  immediately apparent to them as a pump action shotgun."  *See Federal CriminalComplaint filed on December 8, 2020* [Doc.1]. This statement is contradicted by the belt tape at 15:39, when  Deputy Regalado states "this feels

4

weird, I'm just making sure this is a guitar" Deputy Regalado only states on the belt tape recording that "this feels weird" he does not state as in the complaint it the item in the guitar case was a pump shotgun, or it feels like a pump shotgun. On the belt tape, the listener can hear Deputy Regalado's frustration and the zipping of the case.

    **2.** ***Affiant deliberately and with reckless disregard for the truth*** also falsely stated in the Federal Criminal Complaint, "Deputies then opened the main compartment of the guitar case to ensure that the firearm was in a safe condition while transporting it with Silguero." *See the Federal Criminal Complaint filed on December 8, 2020* [Doc 1]. Again, this is blatantly false as evidenced by the deputies belt tape at 15:39, when Deputy Regalado states "this feels weird, I'm just making sure this is a guitar." At no time was there any conversation between Deputies Grimes and Regalado on the belt tapes regarding opening the guitar "to ensure the firearm was in a safe condition while transporting it with Silguero." The deputies only vocalized that the contents of the guitar case "feels weird." Moreover, Deputy Grimes was transporting Silguero in her vehicle. The guitar was in the trunk of Deputy Regaldo's vehicle. The two were separated. Silguero did not have access to the guitar during transport and there was no need to make certain the guitar was in a safe condition.

    *See Salmon v. Schwarz*, 948 F.2d 1131, 1140 (10th Cir. 1991) (holding that "reckless disregard for the truth can be inferred where the circumstances provide obvious reasons for doubting the truthfulness of the allegations.").

    Additionally, even if another officer told the Affiant such deliberate and reckless statements, the statements are still excisable pursuant to *Franks*. 438 U.S at 163, n. 6 (holding that "police [can]not insulate one officer's deliberate misstatements merely by relating it through an officer/affiant personally ignorant of its falsity."); *see also United States v. Kennedy*, 131 F.3d 1371 (10th Cir. 1997) (holding that the government is accountable for "statements made not only

by the affiant but also for statements made by other government employees which were deliberately or recklessly false or misleading…").

**Argument and Authority**

The "chief evil" deterred by the Fourth Amendment is the physical invasion of the home. *See Payton v. New York*, 445 U.S. 573, 585 (1980); *United States v. U.S. Dist. Court*, 407 U.S. 297, 313 (1072); *Tapia v. City of Albuquerque*, 10 F. Supp. 3d 1207, 1298 (D.N.M. 2014). The right of a citizen to retreat into the home and "there be free from unreasonable governmental intrusion" stands at the core of the Fourth Amendment. *Kyllo v. United States*, 533 U.S. 27, 31 (2001).

The searches of Mr. Silguero's guitar case violated the Fourth Amendment due to the lack of probable cause, and the material falsehoods in the criminal complaint affidavit.

The lack of probable cause in this case is based on the genuine surprise Deputy Regalado expressed when finding the firearm. His statement at 15:16 on his belt tape audio after more zippers are unzipped he states in a very surprised tone "that-is-a- shotgun," Deputy Grimes asks "is it?" Deputy Regalado states again in an exasperated tone, "that is a shotgun."

Deputy Grimes (female) is heard giggling in surprise and at 15:21 on his audio recording Deputy Regalado tells Deputy Grimes "oh my God, let me call Sarge real quick, just keep him calm and say I have to make a phone call or something, Jesus's Christmas"

After he telephones his sergeant. Deputy Grimes explains the incident, telling the sergeant they opened the bag not knowing of the contents. The sergeant confirms the unlawfulness of the search when he exclaims "searching the case is not going to work like that!" At that time, Deputy Reglado intervenes. Deputy Reglado then makes several false statements to his sergeant justifying the search. He tells his sergeant that he knew all along that it was a firearm. He states; "the reason I did it was when I grabbed it I felt the front sight and I thought, I

6

thought it was a long gun right away." *Belt tape audio at 30:15*.  At the conclusion of the conversation Deputy Grimes tells Regalado, "that was better for us I think." *See* the belt tape audio at 30:57.

Probable cause is a necessary element of a valid search warrant. U.S. Const. amend IV. "Probable cause means that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001) (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983); *citing United States v. McCarty*, 82 F.3d 943, 947 (10th Cir. 1996)).  "Probable cause to search a person's subject residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998).   The same applies for probable cause to search a man's personal belongings.

The falsehoods in the affidavit demonstrate that the deputy knew his search was illegal and rewrote the facts to uphold the illegal search. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (defining probable cause as "a fair probability that contraband or evidence of a crime will be found in a particular place").  One might argue that the falsehoods in the supporting affidavit in this case suggests that the truth was not adequate to support the search.

**1. The Good-Faith Exception Does Not Apply.**

Because the Affidavit contains misrepresentations and material omissions, the good faith doctrine of *United States v. Leon*, 468 U.S. 897 (1984), does not save the search. *See United States v. Gonzales*, 399 F.3d 1225, 1229 (10th Cir. 2005). In *Leon*, the Supreme Court stated suppression remains an appropriate remedy when the issuing magistrate wholly abandons his judicial role. 468 U.S. at 898-99. The Court recognized ". . . no reasonably well trained officer should rely on the warrant" and "nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief

7

in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923, (quoting *Brown v. Illinois*, 422 U.S. 590, 610-611 (1975)).

The belt tape audio in this case proves the search is wholly lacking in indicia of probable cause because the actual events that transpired completely failed to establish any criminal activity and any probable cause to unzip the guitar case. While *Leon* suggests that officers may rely on the magistrate's judgment, at the same time, officers "are also required to exercise their own professional judgment." *United States v. Gonzales,* 399 F.3d 1225, 1230 (10th Cir. 2005). "Indeed, law enforcement officers are presumed to have a reasonable knowledge of the law." *Leon,* 468 U.S. at 919 n. 20. "[A] reasonably well-trained law enforcement officer should be familiar with the fundamental legal principle that both the 'commission' and 'nexus' elements of 'probable cause' include an essential temporal component." *United States v. Zayas-Diaz,* 95 F.3d 105, 114-115 (1st Cir. 1996), (quoting *Leon,* 468 U.S. at 920, n. 20). However, when a warrant contains falsehoods, reliance thereon is not objectively reasonable and *Leon* requires suppression. *United States v. Stout*, 641 F.Supp. 1074 (N.D.Cal. 1986).

The good faith exception has no application in this case. The good faith doctrine is inapplicable because the criminal complaint affiant violated the *Franks* doctrine by misrepresenting the facts and omitting material information. These omissions and misrepresentations in the affidavit were necessarily knowing, reckless, and vitiated any probable cause for the warrant to issue.

The good faith doctrine cannot apply to salvage the fruits of the warrant from the exclusionary rule. Exclusion is appropriate because the reasonably trained sergent told the officer that his search was not proper, "you can't rely on a hunch" and the officer wrote the criminal complaint in a false way to make the unzipping of the guitar case appear consistent with the law, when the deputy knew he had conducted an unlawful search.

Respectfully Submitted,

*/s/ Roberto Albertorio*
Roberto Albertorio, Attorney for Steven Silguero
PO Box 91387
Albuquerque, NM 87199-1387
justiz1946@gmail.com

## CERTIFICATE OF SERVICE

I, ROBERTO ALBERTORIO, hereby certify that on June 25, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsel of record and/or I hereby certify that I have emailed or mailed via the United States Postal Service or delivered by hand the document to the following non-CM/ECF participants:

**Timothy Dale Trembley**
United States Attorney's Office
District of New Mexico
201 Third Street, N.W.
Suite 900
Albuquerque, NM 87102
505-346-7274
Fax: 505-346-7296
Email: timothy.trembley@usdoj.gov